# 2009 DTA 138

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE MAYAGÜEZ-AGUADILLA**
**PANEL VII**

ANNETTE LAVERGNE PAGÁN
Apelada

v.

INSTITUTO PRE-VOCACIONAL E INDUSTRIAL DE PUERTO RICO
Apelante

Núm. KLAN-08-00753

San Juan, Puerto Rico, a 22 de septiembre de 2009

Panel integrado por su Presidente, el Juez Soler Aquino,
y los Jueces Cordero Vázquez y Morales Rodríguez

Soler Aquino, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La demandada apela de una sentencia dictada por el Tribunal de Primera Instancia el 9 de abril de 2008, notificada el 16 de abril de 2008. Alega que dicho foro erró al:

"1. emitir una sentencia faltando una parte indispensable como lo es, el proveedor de los fondos con los cuales opera el programa PESOS del Departamento del Trabajo, mediante el Programa de Rehabilitación Vocacional.

2. concluir que la querellante llegó a desarrollar una expectativa de continuidad en su empleo.

3. no tomar en consideración una cantidad sustancial de evidencia documental y testifical que no tomó en consideración y resolver a base de inferencias no permisibles.

4. conceder una mesada que no corresponde en derecho habiendo concluido inicialmente que el contrato era uno por tiempo determinado, por lo que sería de aplicación a lo sumo a las disposiciones del Código Civil, referentes a obligaciones y contratos.

5. determinar que el querellado obró temerariamente en la litigación del caso. El Tribunal de Primera Instancia precisamente reconoce que el peso de la prueba le corresponde a la querellante y la propia reclamante reconoció que el contrato era uno de término y en adición tuvo que aceptar que si le habían sido entregados memos o "warnings"."

Surge de autos, que el 14 de agosto de 2006, el patrono apelante envió la siguiente comunicación a la apelada:

*"Srta Annette Lavergne*
*Adiestradora*
*Programa de Empleo Sostenido*
*I.P.V.I. de Puerto Rico*
*Mayagüez, Puerto Rico*

*Srta. Annette Lavergne:*

*Por este medio se le informa que hemos decidido finalizar su contrato con nosotros, efectivo hoy lunes, 14 de agosto del corriente año.*

*Usted incurrió en la violación de varias reglas de conducta establecidas en el Manual Medidas Disciplinarias Aplicables Corrientemente a las Infracciones de esta Institución.* **Falta de interés en el trabajo** *(Falta de interés y eficiencia en la realización de sus funciones. Pág. 1)* **Negocio de Préstamo** *(Solicitar dinero prestado a un empleado de la Fábrica. Pág. 2)* **Servicio al Público** *(Faltar a la atención en la consideración de solicitudes y/o peticiones de los supervisores de la Fábrica mostrando mal humor. Pág. 3).* **Insubordinación.** *(Incumplir instrucciones del supervisor inmediato compatibles con las funciones y objetivos de la Institución: si es una directriz que pone en riesgo un programa o la clientela; dejar de efectuar labores o efectuarlas indebidamente sin seguir las directrices poniendo en riesgo los fondos del programa. Pág. 4)* **Vestimenta fuera de requerimiento** *(No cumple con el código de vestimenta según requerido por la Institución. Pág. 3)* **Dormir en el trabajo** *(En horas de trabajo. Pág. 4)*

**"La violación de una sola de estas reglas de conducta o de varias de ellas es evidencia de que el empleado no responde a los requerimientos del desempeño de deberes satisfactoriamente y corresponde destitución.**

*Sin otro particular al cual hacer referencia quedo.*

*Cordialmente,*

*(firmado)*

*Nilsa López Rivera*
*Directora Ejecutiva"*

La apelada presentó una querella por despido injustificado, al amparo de la Ley de Procedimiento Sumario Laboral. La querellada apelante alegó que la querella carecía de hechos que justificaran la concesión de un remedio.

Celebrada la vista en su fondo y a base de la totalidad de la prueba desfilada, el Tribunal de Primera Instancia determinó como hechos probados que:

"1. La relación laboral entre las partes se inició el 7 de junio de 2001, cuando la querellante firmó un contrato de un año como adiestradora de empleo.

2. La querellada es una organización sin fines de lucro que presta servicios a través de diversos programas, a base de propuestas para la asignación de fondos federales.

3. La querellante fue contratada para prestar servicios en el Programa de Empleos Sostenidos, para Personas con Impedimentos Físicos y Mentales.

4. La querellante, junto al contrato original, firmó un documento denominado "Orientación a Empleado Nuevo", donde se le informó que existe un Reglamento de Normas Disciplinarias Aplicables a cada Estipulación, que se compartirá con usted. A manuscrito se escribió "Se le dio a leer el manual".

5. Quedó claramente establecido que el patrono no le llegó a entregar copia del Reglamento a la querellante. La querellada ni siquiera sometió el reglamento en evidencia, a pesar de que la razón del despido está alegadamente sustentada en el mismo.

6. La querellada era sometida a evaluaciones periódicas por parte del patrono. En vista de sus calificaciones satisfactorias se le extendieron renovaciones anuales consecutivas por espacio de cinco (5) años. La prueba permitió al tribunal determinar que la querellante llegó a desarrollar una expectativa de continuidad en su empleo.

7. La querellante, hasta la fecha de su despido el 14 de agosto de 2006, no había sido objeto de ninguna sanción o medida disciplinaria por parte de su patrono.

8. La carta de despido está basada en varias violaciones de conducta establecida en el Manual Medidas Disciplinarias. No obstante, el querellado no le entregó copia de dicho reglamento a la querellada y tampoco fue presentado como evidencia. Se desconoce el procedimiento disciplinario contemplado el mismo.

9. A la fecha de su despido, la querellante recibía un sueldo mensual de $1,600.00.

10. La querellada visitó a la Directora Ejecutiva y ésta se reafirmó en el despido, pero le informó que podía tramitar el otorgamiento de otro contrato para otra posición y en otro programa. La querellante no aceptó porque estaba segura que no había incurrido en las faltas imputadas."

A base de los hechos probados, el foro apelado concluyó que si bien la relación de empleo entre las partes tuvo como punto de partida un contrato por término establecido, su renovación regular por el transcurso de los años, dio a la querellante una expectativa razonable de continuidad en su puesto. La razón de ser del término sólo obedecía a que dependía de la aprobación de propuestas anuales de fondos federales. Aunque el querellado había adoptado una reglamentación para la conducta de sus empleados, se limitó a leerlo a la querellante al inicio de su relación laboral. Ésta nunca recibió copia del reglamento, a pesar de que su despido estuvo basado en violaciones al mismo.

El Tribunal de Primera Instancia resolvió que aun de ser ciertas las faltas imputadas a la querellante en la carta de despido, no se justificaba el despido como primera sanción. No existe ninguna evidencia de que su conducta pusiera en riesgo el orden, la seguridad, la eficiencia y el funcionamiento normal de la querellada. A diferencia, el tribunal determinó probado que el patrono querellado actuó con temeridad. En consecuencia, declaró CON LUGAR la demanda y ordenó a la querellada a pagar a la querellante la suma de $8,495.15 por concepto de mesada, el 25% de honorarios de abogado e intereses. Es de esta sentencia que se acude ante nos.

La apelante alega que la sentencia apelada fue dictada en ausencia de partes indispensables. Según la apelante, en el pleito debieron ser incluidas como partes indispensables el Programa de Rehabilitación Vocacional y el Departamento del Trabajo, por ser los proveedores de los fondos del programa para el cual trabajaba la querellada.

La Regla 16.1 de Procedimiento Civil sobre acumulación de parte indispensable tiene como propósito proteger a la persona que no está presente en el pleito de los efectos legales de la sentencia y así evitar que se multipliquen pleitos. La falta de parte indispensable constituye un planteamiento tan relevante y vital que puede presentarse en cualquier momento. La omisión de traer a una parte indispensable al pleito constituye una violación al debido proceso de ley. *Romero v. Reyes Rivera,* **2005 J.T.S. 66**.

Al determinar si una parte es o no indispensable, el tribunal deberá hacer una evaluación individual a la luz de las circunstancias particulares que se presentan. No existe una fórmula rígida para determinar su aplicación. Los tribunales tienen que hacer un análisis juicioso que envuelva los derechos de un ausente y las consecuencias de no

ser incluido como parte en el procedimiento. Es importante determinar si el tribunal podrá hacer justicia y conceder un remedio final y completo sin afectar los derechos del ausente. *Romero v. Reyes Rivera, supra.*

El interés común al que se alude en la Regla 16.1 de Procedimiento Civil, no es cualquier interés en el pleito, sino que tiene que ser de tal orden que impida la confección de un derecho sin aceptarlo. El interés afectado tiene que ser real e inmediato al extremo de impedir la confección de un decreto adecuado.

Una parte indispensable es aquella cuyos derechos e intereses podrían quedar destruidos o inevitablemente afectados por una sentencia dictada estando esa parte ausente del litigio. *Romero v. Reyes Rivera, supra.*

La apelante alega que el Departamento del Trabajo y el Programa de Rehabilitación Vocacional son partes indispensables, por el hecho de ser los proveedores de los fondos del programa para el cual trabajaba la apelada. Sin embargo, no ha presentado prueba alguna de que los derechos o intereses de las partes que alega son indispensables, pudieran ser afectados si no son incluidos en el pleito.

Los demás errores señalados atacan la apreciación de la prueba del tribunal sentenciador que le llevó a concluir que la apelada es beneficiaria de la Ley 80.

Sabido es que los tribunales apelativos no deben intervenir con la apreciación de la prueba que realizan los tribunales de instancia en ausencia de pasión, prejuicio, error manifiesto o parcialidad. Esta norma descansa en el hecho de que los foros de primera instancia están en mejor posición para evaluar la prueba desfilada, pues tienen la oportunidad de observar y escuchar a los testigos. *Colón v. Glamorous Nails & Boutique Inc.,* **2006 J.T.S. 25**.

La Ley 80 del 30 de mayo de 1976 protege a los empleados de cualquier industria, comercio o negocio de los efectos de un despido injustificado. Además de proveer unos remedios, tiene como propósito desalentar la incidencia de este tipo de despido. El empleado despedido sin justa causa, tiene el derecho a recibir de su patrono el sueldo correspondiente a entre dos y seis meses por concepto de indemnización y una indemnización progresiva adicional equivalente a entre una y tres semanas por cada año de servicio. Esta compensación pretende brindar a los trabajadores que han sido despedidos sin justa causa, la oportunidad de disfrutar de una indemnización que les permite suplir sus necesidades básicas durante el tiempo que les pueda tomar conseguir un nuevo empleo. (29 L.P.R.A. sec. 185(a)), *Díaz v. Wyndham Hotel Corp.,* 155 D.P.R. 364 (2001)

Para ser acreedor a la protección y a los beneficios que ofrece la Ley 80, *supra,* el empleado separado de su cargo debe cumplir con los siguientes requisitos: 1) la existencia de una relación obrero-patrono en algún negocio, industria o sitio de empleo, 2) que la labor rendida sea remunerada, 3) que el trabajador haya sido contratado sin tiempo determinado, y 4) que el empleado haya sido despedido sin que medie justa causa. *Díaz v. Wyndham, supra.*

El mero hecho de que un empleado preste servicios al amparo de un contrato por tiempo determinado, por sí sólo no tiene el efecto automático de privarle de la protección de la Ley 80. Un empleado también podrá ser considerado como contratado sin tiempo determinado, cuando las circunstancias y prácticas, así como cualquier otra evidencia en la contratación, creen una expectativa de continuidad o exista la apariencia de un contrato de empleo por tiempo indeterminado bonafide. A excepción de empleados contratados por un término cierto bonafide, o para un proyecto u obra cierta bonafide, se presumirá como un despido injustificado toda separación, terminación o cesantía de empleados contratados por término cierto o proyecto u obra cierta, así como la no renovación de su contrato, (29 L.P.R.A. sec. 185(b)).

Se entenderá como justa causa para el despido cuando:

"1. el obrero siga un patrón de conducta impropio o desordenado;

2. el empleado tiene una actitud de no rendir su trabajo en forma eficiente, o lo hace de forma tardía y negligente, o en violación de las normas de calidad del producto;

3. el empleado viola reiteradamente las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento, siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado;

4. cierre total o temporero de las operaciones del establecimiento;

5. cambios tecnológicos o de reorganización, de estilo, diseño o naturaleza del producto y en los servicios rendidos al público;

6. reducciones en empleo que se hacen necesarias, debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido." (29 L.P.R.A. sec. 185(b))

No se favorece el despido como sanción a la primera falta cometida por un empleado, salvo que sea de tal intensidad el agravio que así lo requiera en protección de la buena marcha de una empresa y la seguridad de las personas que allí laboran. La falta o acto aislado que dé lugar al despido del empleado en primera ofensa tiene que ser de tal seriedad o naturaleza que revele una actitud o un detalle de su carácter tan lesivo a la paz y al buen orden de la empresa que constituiría imprudencia esperar su reiteración para separarlo del establecimiento. *Secretario del Trabajo v. ITT*, 108 D.P.R. 536 (1979); *Delgado Zayas v. Hosp. Int. Med. Avanzada*, 137 D.P.R. 643 (1994).

La apelante alega que la apelada no tiene derecho a los beneficios de la Ley 80 porque no era una empleada a tiempo indeterminado. Esta legislación categóricamente establece que el mero hecho de que un empleado preste servicios mediante un contrato a tiempo determinado, no le excluye de sus beneficios, si demuestra que tiene una expectativa de continuidad en su empleo. En el caso de autos, el foro apelado concluyó de la prueba desfilada, que la apelada tenía una expectativa de continuidad en su empleo. Su trabajo era evaluado periódicamente. El patrono siempre le dio calificaciones satisfactorias, al punto de que su contrato fue renovado anualmente durante cinco años consecutivos. La única razón para que el contrato fuera renovado anualmente, era la necesidad de la disponibilidad de los fondos para su aprobación. De ningún modo la renovación estaba relacionada al desempeño de la apelada, quien para la fecha de su despido tampoco había sido objeto de ninguna sanción o medida disciplinaria.

Probado que la apelada tenía una expectativa razonable de continuidad en su empleo, es un hecho que también le cobija la protección de la Ley 80, con el despido injustificado. La prueba presentada y creída por el tribunal sentenciador demostró que no existía justa causa para el despido de la apelada. Como hemos expresado, la apelada recibió calificaciones satisfactorias en todas las evaluaciones que le hizo su patrono. Su contrato fue renovado durante cinco años, tiempo durante el cual nunca fue objeto de ninguna sanción o medida disciplinaria. El patrono fundamentó su despido en violaciones al Manual de Conductas Disciplinarias. No obstante, se limitó a leerle su contenido a la apelada, cuando fue originalmente contratada. Nunca le entregó copia del mismo, ni lo presentó como evidencia al tribunal sentenciador, para que pudiera establecer cuál era el procedimiento disciplinario contemplado.

Al igual que el foro apelado, concluimos que no existe evidencia alguna en autos que constituya justa causa para el despido de la apelada. Aun en el supuesto de que aceptemos probadas las faltas imputadas en la carta de despido, no se justifica el despido como primera sanción, de acuerdo con los criterios establecidos por la Ley 80 como justa.

Por último, el apelante alega que el tribunal erró al imponerle temeridad. Es norma reiterada que la imposición de honorarios de abogado sólo procede cuando una parte ha actuado con temeridad o frivolidad. El

propósito de la determinación de temeridad y la eventual imposición de honorarios de abogado es penalizar al litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito. *Santiago Colón* v. *Supermercados Grande*, **2006 J.T.S. 21.**

La determinación de si una parte ha actuado o no con temeridad, que acarrea imposición de honorarios de abogado, descansa en la sana discreción del tribunal. Los tribunales revisores intervendrán únicamente, cuando surja de tal actuación un claro abuso de discreción. *Santiago Colón* v. *Supermercados Grande*, *supra*.

En el caso de autos, el tribunal sentenciador en el ejercicio de su discreción, determinó que la conducta procesal de la parte apelante estuvo matizada por la temeridad. En ausencia de evidencia de que dicho foro abusó de su discreción, no intervendremos con su determinación de imponer el pago de honorarios de abogado a la apelante.

Por todas las razones antes expuestas y de conformidad al derecho citado, se confirma la sentencia apelada.

Lo acordó el Tribunal y lo certifica la Secretaria.

Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones